## Case No. 7,372.

JOHNSON et al. v. The BELLE OF THE SEA.

[15 Int. Rev. Rec. 146: 4 Leg. Gaz. 108.]

Circuit Court, E. D. Pennsylvania. April 1, 1872.[1]

S. C. Perkins, for libellants.
Henry Flanders, contra.

McKENNAN, Circuit Judge. The district court rendered a decree in favor of the libellants [case unreported], and the respondent now seeks to reverse it, on the ground that the advances made by the libellants extinguished the lien of the bottomry bond, the freights, general average, and insurance only being pledged for their reimbursement; and that by their representations to the purchaser of the vessel they are estopped from asserting any lien upon it. The captain of

---

[1] [Affirmed in 20 Wall. (87 U. S.) 421.]

the Belle of the Sea executed, at Port Lewis, in the island of Mauritius, to Houdlette & Perkins, a bottomry bond for $29,444 05 gold, payable within ten days after the safe arrival of the ship at New York. The validity of this bond is not contested. Upon the arrival of the ship at New York, therefore, a lien for the sum stated, in favor of the bottomry creditor, attached to the ship and her cargo, according to the stipulations of the bond. The bond passed into the hands of Baring Bros., by whom it was duly assigned to S. G. & G. C. Ward, and by them to the libellants, in consideration of the payment of $46,805 31, its currency value. The libellants thus became apparently bona fide holders of it, and entitled to the security of its lien. But the respondent alleges that this lien was released or extinguished by an agreement by the libellants with the owners of the ship that they would take up the bond and look only to the freights, general average, and insurance for their reimbursement. This he is plainly bound to prove. I think he has failed to do it.

It is evident that the libellants had proposed to the agents of the Barings to pay the bond and take an assignment of it, before they had any interview with Edmund Kimball, the owner of the ship. Their occupation was that of adjusters of averages, and they were doubtless desirous to be employed in that capacity in reference to this ship. Whatever estimate they may have made of the comparative resources and liabilities of the ship, whatever assurances they may have given as to their ability to marshal and adjust them for the best interests of the owner, these are to be considered as reasons suggested for their employment rather than as importing a stipulation that they would accept such resources as their sole security for reimbursement. Proposing to pay the amount of the bond, and to take an assignment of it, it is improbable that they intended to forego the certain security thus afforded them, and depend upon the problematical sufficiency of the ship's credits to return their large advances. Admitting that they were the agents of the ship-owner, the payment of the debt with their own money would not work a satisfaction of the debt, or an extinguishment of the security for it. By the assignment of the bond they took the place of the bottomry creditor, and there is no incompatibility in the rights to which they thus succeeded and their duties and obligations as agents of the debtor. Certainly there is no implication, in equity, at least, that by becoming agents of the debtor they thereby surrendered or lost any of their securities as creditors. Admitting further that they paid the bond in pursuance of an arrangement with the owner to that effect, still the debt with its incidents subsisted, and would only be discharged by payment in money or in some other conventional mode. The respondent's defence really concedes this much; for he does not allege that the bond itself was satisfied, but only that it is not a lien upon the ship, because the libellants paid it on the faith and credit of the freights, general average and insurance exclusively. But such conclusion can only result from an express or implied agreement to that effect. That the libellants expressly agreed to take up the bond and forego its lien does not appear in all the proofs; nor is it to be inferred from the fact of their agency or from an agreement to take it up with their money, and to adjust the liabilities and marshal the resources of the ship for the best interests of her owner.

It is to be observed that, at the time the bond was transferred to the libellants, it was a valid lien upon the ship, and the only question is whether, by any arrangement with the owner, they are disabled from enforcing it. Thus this case is distinguished from Minturn v. Maynard, 17 How. [58 U. S.] 477, relied upon by the respondent's counsel, where there was no maritime contract, but where an agent invoked the jurisdiction of admiralty to recover a balance of accounts for money expended in paying for supplies, repairs and advertising of a steamboat, furnished on the personal credit of his principal, and not on the credit of the boat.

If the libellants represented to the respondent that, if certain claims of the freightors were paid, there would be a balance in their hands in favor of the ship or her owner, and he thereupon paid these claims and purchased the ship, they could not maintain this suit. But this is a fact which it devolves upon the respondent to prove. The proof of it rests upon his unsupported testimony. It is distinctly and positively denied by the libellant, Higgins, who is alleged to have made the representation. Thus affirmed by one party and denied by the other, it cannot be considered as established, and the estoppel, which rests upon it, necessarily fails.

The district court rightfully sanctioned the application of the freight money to the payment of the unsecured disbursements of the libellants, leaving the surplus only to be credited on the bottomry bond. So applying it, with the other proper credits, the sum of $5.271 99 remains unpaid on the bond. For this amount, with New York interest from July 1, 1869, a decree will be entered in favor of the libellants, with costs in this court, but without their costs in the district court.